UNITED STATES of America DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Petitioner,

v.

Emerson SUTTON, d/b/a Emerson Sutton Realty Co., Respondent.

No. 86 MISC 28.

United States District Court, E.D. Missouri E.D.

May 29, 1986.

Wesley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for petitioner.

Elbert Walton, St. Louis, Mo., for respondent.

## ORDER

GUNN, Jr., District Judge.

Upon consideration of the record, the Report and Recommendation of the Honorable David D. Noce, United States Magistrate, and respondent's objections thereto,

IT IS HEREBY ORDERED that the recommendation of Judge Noce be and is adopted. Respondent shall comply with the administrative subpoena duces tecum served upon him by the government on October 28, 1985.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

DAVID D. NOCE, United States Magistrate.

The petition of the United States for an order to enforce an administrative subpoena duces tecum against respondent was referred to the undersigned United States Magistrate under 28 U.S.C. § 636(b). Respondent Emerson Sutton, doing business as Emerson Sutton Realty Co., has filed his return to the show cause order, his answer, and a motion to quash the subpoena. A hearing was held on this matter on March 5, 1986.

From the record before the Court, the undersigned makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Respondent Emerson Sutton d/b/a Emerson Sutton Realty Co. owns and manages thirty-four (34) properties, the mortgages of which are insured by the petitioner United States Department of Housing and Urban Development (HUD). Petitioner has learned that the mortgages on at least 28 of the 34 HUD-insured properties owned by respondent are currently in default. The total potential exposure of petitioner as insurer on the 34 properties is over one million dollars.

2. In 1984, the HUD Office of the Inspector General (OIG) conducted an audit of the Town and Country Mortgage Co. located in Clayton, Missouri. In the course of the audit, OIG reviewed a property owned and managed by respondent. The mortgage on this property was in default, yet an OIG inspection of the property revealed that many of the 11 units in the building were occupied by rent-paying tenants. This inconsistency prompted OIG to institute an audit of respondent.

3. Harry Taub, HUD Inspector General in St. Louis, has responsibility for the planning and management of audits on HUD programs. On August 27, 1985, Inspector Taub commenced an audit of respondent to determine whether or not there were defaults on properties owned by respondent and to determine the propriety of respondent's ownership and management of the 34 properties owned by respondent and insured by petitioner. At the time, Inspector Taub had learned that foreclosure was imminent on at least several of the subject properties.

4. On September 12, 1985, Inspector Taub contacted respondent, informed him of the audit, and requested access to respondent's financial documents and records concerning the 34 properties. Respondent requested that Inspector Taub provide him in writing the authority for the audit. By letter dated September 12, 1985, respondent was informed that the authority for the audit and the document request was contained in the Inspector General Act of 1978. The relevant portions of that Act were quoted in the letter. Inspector Taub subsequently contacted respondent again by telephone regarding the audit and documents requested. At this time respon-

dent stated that he would not allow access to the requested documents.

5. On October 3, 1985, the Regional Inspector General for Audit, E.J. Caljouw, made a written demand upon respondent for access to the books, records and documents related to the 34 properties. Inspector Caljouw informed respondent that, if respondent did not reply within five days of receipt of the demand, the Inspector General's Office would issue a subpoena duces tecum requiring production of the documents pursuant to of the Inspector General Act of 1978, 5 U.S.C., App. 3, § 6(a)(4).

6. On October 24, 1985, petitioner, acting through Inspector General Paul A. Adams in Washington, D.C., issued a subpoena duces tecum directed to respondent. The subpoena commanded respondent to produce financial records, papers and documents (including, but not limited to, general ledgers, cash receipts and disbursement journals, general payroll and adjusting expense journals, income and expense statements, bank statements, cancelled checks, check stubs, deposit tickets, tenant files, leases and rental receipts, paid invoices, contracts, correspondence, and work orders) for 34 named properties for the years 1984 and 1985. The subpoena required respondent to produce the documents for Inspector Taub or William Krueger at respondent's place of business in St. Louis, Missouri, on November 5, 1985, at 10:00 a.m. Respondent was personally served with the subpoena on October 28, 1985, by William Krueger, a HUD auditor.

7. On November 5, 1985, respondent did not produce the documents and records pursuant to the subpoena. Respondent instead responded to the subpoena with a motion to quash the subpoena.

8. Respondent has to the present time failed and refused to respond to the subpoena. Petitioner does not now have, nor has it ever had, possession of the documents and records sought in the subpoena.

9. Petitioner has possession of the documents regarding its insurance of the subject properties. Petitioner is in possession of documents from its 1984 audit of the Town and Country Mortgage Company. Presumably, these documents contain information on at least one of the subject properties which was in default at the time of the audit.

10. Petitioner is not the holder of any notes, mortgages, or deeds of trust of the properties owned by respondent. Petitioner is the insurer of the notes, mortgages, and deeds of trust held by private lenders. As the insurer, HUD has paid off the debt owed by respondent on at least one of the subject properties. Petitioner believes the property was 417 St. Olaff in Berkeley, Missouri. The subpoena is not limited to documents and records regarding this property, but instead encompasses documents and records regarding all of respondents HUD-insured properties.

11. Lenders who hold the mortgages, notes, and deeds of trust on the properties owned by respondent are not all located in the St. Louis area. They are instead located throughout the United States. With the exception of the Town and Country Mortgage Company, petitioner has not obtained the information sought by the present subpoena from the various lenders.

12. In the Inspector General Act of 1978, P.L. 95–452, 92 Stat. 1101, Congress created HUD's Office of the Inspector General as an independent and objective unit of HUD. 5 U.S.C., App. 3, §§ 1–12.

13. The OIG is empowered by statute to conduct, supervise and coordinate audits and investigations relating to the programs and operations of HUD. The OIG is authorized to prevent and detect fraud in HUD programs, and must inform Congress and the Secretary of HUD of their actions and findings.

14. The OIG is authorized by statute to make such investigations and reports relating to the administration of HUD programs as are necessary or desirable in the judgment of the OIG. 5 U.S.C., App. 3, § 6(a)(2).

15. The OIG is authorized to require by subpoena the production of all information, documents, reports, answers, records, accounts, papers and other data and documentary evidence as is necessary in the performance of the OIG's functions as assigned by the Inspector General Act of 1978. 5 U.S.C., App. 3, § 6(a)(4).

16. One of the HUD programs over which the OIG has supervisory responsibility is the program under § 221(d)(2) of the National Housing Act. In this program HUD insures lenders against loss of mortgage loans, thereby promoting the purchase, construction or rehabilitation of low-cost one to four-family housing.

17. Respondent, as the owner of 34 HUD-insured properties, is a participant in HUD's § 221(d)(2) insurance program.

18. The regulations of HUD do not require an actual default or foreclosure prior to the commencement of an administrative audit concerning HUD-insured properties.

19. If HUD determines that a default has occurred on a loan which HUD has insured, HUD may deny the defaulting party participation in its programs. If, in the course of an audit, the OIG has reasonable grounds to believe that a program participant has committed a crime, then OIG must refer the matter to the United States Department of Justice for prosecution. 5 U.S.C., App. 3, § 4(d). No such action has been taken by either HUD or the OIG against respondent.

20. On December 27, 1984, respondent filed a voluntary petition, under 11 U.S.C. § 301, for an arrangement under Chapter 11 of the United States Bankruptcy Code. This petition remains pending before the United States Bankruptcy Court for the Eastern District of Missouri.

## CONCLUSIONS OF LAW

■ In this action, petitioner seeks enforcement of the subpoena duces tecum issued by Inspector General Paul A. Adams on October 24, 1985. In his answer, show cause response, and his motion to quash, respondent asserts that he has the legal

right and privilege not to produce the requested documents during the pendency of his Chapter 11 bankruptcy proceeding. Respondent bases his argument on § 362(a)(1) of the Bankruptcy Code, which provides that the filing of a petition under § 301 of the Code operates as a stay of the commencement, including the issuance or employment of process, or continuation of an administrative proceeding against the debtor or the property of the estate. 11 U.S.C. § 362(a)(1).

In response, petitioner argues first that the audit of respondent's records is not an "administrative proceeding against the debtor" or "against the property of the estate" and, therefore that the stay provision is inapplicable. Petitioner states the stay provision addresses only adversarial, trial-type proceedings and not to the neutral administrative audit involved here.

At least one other federal court has expressed doubt whether the issuance of a subpoena falls within the "proceeding against the debtor" language. *See, Barsky v. Commonwealth of Pennsylvania,* 11 B.R. 478, 480 (Bankr.E.D.Pa.1981). Nevertheless, an investigation of the debtor has been deemed to be an "action" under § 362 of the Bankruptcy Code. *In re Farmers & Ranchers Livestock Auction, Inc.,* 46 B.R. 781, 792 (Bankr.E.D.Ark. 1984).

Resolution of this issue is not necessary for a decision, however, because even assuming that the investigation and subpoena constitute an administrative proceeding to which the stay applies, the Court concludes that an exception to the automatic stay is applicable. The exception states:

(b) The filing of a petition under section 301 ... does not operate as a stay—

.    .    .    .    .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4).

HUD and the Inspector General assert that the audit and subpoena duces tecum

constitute an exercise of their police and regulatory power. The Court agrees that the investigation is within the regulatory authority of the agencies. The Inspector General Act of 1978 conferred upon the OIG the power and the duty to investigate HUD programs for fraud and irregularities and to oversee compliance with HUD regulations by program participants. In this case, the OIG has reason to believe that respondent possibly violated HUD regulations and committed a fraud upon the agency. The OIG is clearly exercising its power to regulate and police.

In addition, if some impropriety is eventually discovered, allowing the government to proceed may in fact serve to protect the debtor's estate for the benefit of creditors. *See, S.E.C. v. First Financial Group of Texas,* 645 F.2d 429, 439 (5th Cir.1981). This result conforms to the purpose of the automatic stay requirement. *Id.*

■■■ If petitioner's investigation dealt solely with and was primarily for the benefit of HUD's financial interest in the properties, then the governmental unit exception would not apply. The law is clear that the "police or regulatory power" language of the § 362(b)(4) exception relates only to the public health, welfare, morals, and safety, and not to matters of purely pecuniary interest. *State of Missouri v. United States Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *In re Farmers & Ranchers Livestock Auction, Inc., supra,* at 792. Investigations for potential fraud fall within the scope of the exception. *See,* H.R.Rep. No. 595, 9th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6299. Respondent has made no showing that the audit and subpoena are not within the governmental unit exception. *In re LaPorta,* 26 B.R. 687, 692 (Bankr.N.D.Ill. 1982).

The Court concludes that petitioner's investigation relates to potential fraud and is, therefore, not subject to the stay provision of § 362. This result is consistent with the intent of Congress. *See,* H.R.Rep.

No. 595, *supra, at* 343, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6299.

Respondent states that the subpoena duces tecum requested documents for the years 1984 and 1985, but that he had made no purchases of housing through HUD in 1985 and had purchased "less than" five units of housing through HUD in 1984. Apparently respondent's contention is that the subpoena is overbroad in that HUD has no right to seek documents for years in which respondent did not purchase any housing through HUD or for years in which his housing purchases were minimal. Respondent's argument disregards the purpose of the OIG investigation. OIG does not question the manner in which respondent purchased housing units through HUD. Instead, OIG claims that respondent has defaulted in his payments on the mortgage, and that the properties are being held and managed improperly by respondent. OIG seeks documents relating to respondent's management and ownership of the property. Respondent's argument is, therefore, irrelevant. OIG has a duty to oversee HUD programs and respondent does not dispute that during the years in question he was a program participant. Respondent does not allege that he sold all of his HUD-insured properties before 1984 and has not participated in HUD programs since that date.

Respondent's next ground for quashing the subpoena is that there is no relationship between HUD and himself providing a basis for the audit and subpoena. Respondent asserts that HUD is merely the insurer, and not the holder of any notes, deeds of trust and mortgages to which respondent is a party. Respondent states that HUD has made no payments to its insureds under any of the notes, deeds of trust or mortgages ·to which respondent may be a party. Finally, respondent submits that there is no privity of contract between himself and HUD nor is HUD the real party in interest to include respondent and respondent's financial records within its audit.

■■ The Court finds that the relationship between HUD, as the insurer, and

respondent, as a HUD program participant, confers upon HUD the right to review respondent's books and records as they relate to the 34 insured properties. There is no requirement that privity of contract exist, nor does the law require an actual default or payment by HUD prior to the commencement of an audit.

■ Respondent next contends the subpoena is overly broad in that it seeks irrelevant and immaterial documents having no relationship to HUD nor its audit. Petitioner argues in response that the subpoena seeks only those financial records and documents which relate directly to respondent's ownership and management of the 34 properties.

The purpose of the audit is to determine whether the HUD-insured loans on these properties have been processed and managed in an economical and efficient manner, without fraud or abuse, and in accordance with HUD regulations. Thus, the documents sought are relevant and necessary to a thorough and complete audit.

Respondent states that the subpoena seeks privileged as well as personal and private materials. Respondent has not, however, stated any facts supporting this assertion.

Respondent complains that HUD has not stated with sufficient specificity the documents which it seeks. The subpoena requests fifteen categories of materials for the 34 properties, which are identified by address. The Court concludes that respondent's specificity argument is without merit.

■ Finally, respondent asserts that compliance with the subpoena would be burdensome, expensive and oppressive. In response, petitioner states that respondent is a Chapter 11 debtor in possession of his records and that petitioner is willing to travel to respondent's place of business to gather the documents and to do the necessary copying at its expense.

The burden is on respondent to demonstrate the unreasonableness of petitioner's demands. *Donaldson v. United States*, 400 U.S. 517, 527, 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971); *United States v. Pow-*

*ell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974). Respondent has not met his burden of proof on this issue.

A federal administrative subpoena should be enforced if (a) the audit and the issuance of the subpoena are within the authority of the agency; (b) the documents sought are reasonably relevant to the inquiry; and (c) the demands are not unduly burdensome or unreasonably broad. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950). Based on the preceding discussion, the Court finds that these conditions have been met in this case, and that the subpoena should be enforced.

### RECOMMENDATION

IT IS RECOMMENDED that the administrative subpoena duces tecum issued by petitioner on October 24, 1985, to respondent and served upon respondent on October 28, 1985, be enforced by Court order. The parties have eleven (11) days in which to file objections to this Report and Recommendation.