In re Robert Wayne DUNBAR and
Kimberly Ann Dunbar,
Debtors.

Robert Wayne Dunbar and Kimberly
Ann Dunbar, Appellants,

Contractors' State License Board of
California, Registrar of Contractors
State of California, Department of
Consumer Affairs State of California,
Frank Martin, Denise Martin, and
Surety Company of the Pacific, Appel-
lees.

BAP No. NC–98–1571–RPK.
Bankruptcy No. 95–5–3094–JRG.
Adversary No. 98–5195.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 22, 1999.

Decided June 16, 1999.

Edward A. Kunnes, Law Offices of David A. Boone, San Jose, CA, for Robert and Kimberly Dunbar.

Maretta D. Ward, Department of Justice, Office of the Attorney General, San Francisco, CA, for State of California.

Kipp C. Wordell, Bakes & Slenkovich, LLP, Palo Alto, CA, for Frank and Denise Martin.

Before RUSSELL, PERRIS, and KLEIN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

Appellants Robert and Kimberly Dunbar appeal the bankruptcy court's order denying their request for an injunction barring the California Contractors State License Board, the California Registrar of Contractors and the Department of Consumer Affairs (collectively, "state agency") from canceling and rescinding Robert Dunbar's contracting license. Appellants also appeal the bankruptcy court's order denying their request for an injunction against Frank and Denise Martins' efforts to collect on Robert Dunbar's contractor's bond, and the court's determination that the issuer of the bond may make a payment on the bond because it was not prop-

erty of the estate.[1] We AFFIRM the denial of the injunction regarding the action to collect on the contractor's bond and VACATE and REMAND the refusal to enjoin the state agency from revoking the contractor's license.

## I. FACTS

In September 1993, Robert Dunbar ("Dunbar"), on behalf of Concrete and Masonry Construction, Inc., entered into a written contract with Frank and Denise Martin ("Martins") to install a concrete driveway, walkway, and patio at their home for the initial price of $16,630.00. By the time Dunbar completed the installation of the concrete in November 1993, the contract price increased to $18,070.00, which the Martins paid in full. Almost two years later, Robert and Kimberly Dunbar ("debtors") filed a voluntary chapter 13[2] petition on May 15, 1995.[3] The debtors did not list the Martins on their schedules.

In early 1996, the Martins noticed that the concrete was beginning to crumble. The Martins requested Dunbar to repair the concrete or to pay for the cost of its repair. After unsuccessful efforts to get Dunbar to resolve the problem, the Martins filed a complaint against him with California's Contractors' State License Board (and the Registrar of Contractors), presumably without knowledge of Dunbar's chapter 13 case. In September 1997, during the pendency of the state agency's investigation of the Martins' complaint ("State Agency Complaint") against Dun-

bar, the Martins sued him and the issuer of his contractor's bond for breach of contract, breach of warranty, fraud, negligence, strict liability, and misrepresentation ("State Court Complaint").[4]

An administrative hearing on the State Agency Complaint was set for November 4, 1997, at which Dunbar failed appear. Just prior to the hearing, however, Dunbar sent a letter to the deputy attorney general, who represented the state agency, seeking to stop the administrative hearing on basis that it was subject to the automatic stay. The administrative law judge ("ALJ") treated Dunbar's letter as a motion to terminate the administrative proceedings, and stated that the bankruptcy filing did not preclude the state agency's commencement of disciplinary action against Dunbar's license. The ALJ reasoned:

*The [state agency] is unaware of any bankruptcy plan for respondent Dunbar that lists homeowner (Frank or Denise Martin) as a creditor or creditors as subject to respondent Dunbar's discharge.*

Thus, the [state agency] clearly would not be in violation of the automatic stay provisions of the Bankruptcy Code by ordering that as a condition of probation respondent Dunbar remove the defective concrete deck and walkways in a good and workmanlike manner and to warrant that the installed material will be free of contaminants or aggregate particles that might lead to spalls; *or that the [state agency], in the alternative,*

---

1. The bankruptcy court's order on injunctive relief included a determination that the Martins' state court action against Dunbar was subject to the automatic stay. The court granted the debtors' request for a preliminary injunction to enjoin the Martins from proceeding with their lawsuit against Dunbar. This portion of the court's order is not on appeal. The Martins do not contest the court's finding that their state court action is stayed. We express no view about the necessity of issuing an injunction to enjoin the violation of another injunction.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. Concrete and Masonry Construction, Inc. filed a voluntary chapter 7 petition in February 1996, which was closed as a no-asset case.

4. It is unclear from the record on appeal whether the Martins obtained a default judgment against Dunbar.

*upon subjecting respondent Dunbar to probation, can direct respondent Dunbar to make restitution to homeowner.*

Proposed Decision of Administrative Law Judge, Part XIII, pp. 17–18 (emphasis added).

The ALJ concluded that because the state agency was a governmental unit seeking to enforce its police or regulatory powers as codified under the Business and Professions Code, the state agency's disciplinary actions fell squarely within the automatic stay exception of § 362(b)(4).[5]

The ALJ found Dunbar guilty of poor workmanship by way of failing "to use clean, non-porous, non-reactive aggregate while forming and/or pouring the concrete for the driveway, patio and walkways" at the Martins' residence. The consequence was that there were numerous "spalls" (chipped areas) that were "due to improper installation techniques or handling techniques" used by Dunbar, which spalling was so excessive as to necessitate complete removal and replacement. Decision, Findings XI – XIV, pp. 12–18. The cost of removal and replacement was determined to be $27,000.

The ALJ also found Dunbar's contract form to violate governing rules because it did not specify when work would start (Dunbar actually started work the day after the contract was signed) or when work was estimated to be finished (it was finished within 45 days and was not the subject of complaint). In addition, the ALJ found that Dunbar violated the regulatory prohibition against accepting a down payment in excess of $1,000 when he accepted $5,000 on the day that work began.

The Board, adopting the ALJ's recommendation, required Dunbar to pay "restitution" of $27,000 or replace the concrete work at no expense to the Martins. In that recommendation, the ALJ reasoned that requiring Dunbar to pay $27,000 would not violate § 525(a) because the purpose of making him pay the cost of replacing his poor workmanship would "rehabilitate" him. It was ordered that "[f]ailure to submit such proof of making full repairs at the project site, or in the alternative to make full restitution to homeowner, shall automatically terminate the stay of the order of revocation and respondent's license shall be revoked effective 366 days from the effective date of this decision." Decision, Order I, p. 18.

The Board also ordered that Dunbar pay its investigation expenses of $2,921.56 (which expenses the ALJ had opined to be post-petition expense and unaffected by a bankruptcy discharge), that he submit copies of all contracts to the Board for a period of years, and that he post a $30,000 contractor's bond (or cash), which bond is three or four times the amount normally required.

After the Board made its order, the debtors filed a complaint in bankruptcy court seeking injunctive relief to prevent the Board from enforcing its order and revoking his contractor's license and seeking to prevent the Martins from prosecuting the State Court Complaint against Dunbar or the issuer of his prepetition contractor's bond. They contended that violations of the automatic stay justified injunctive relief.

With respect to the request for injunctive relief against the Board, the bankruptcy court concluded that the ALJ's determination that the automatic stay was not being violated was binding under principles of collateral estoppel and, accordingly, that no injunction should issue. With re-

---

**5.** Section 362(b)(4) provides in pertinent part:
(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
. . . .
(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power ...;
11 U.S.C. § 362(b)(4).

spect to the State Court Complaint, the bankruptcy court enjoined the Martins from proceeding against Dunbar but declined to enjoin them from proceeding against the issuer of the prepetition contractor's bond.

In this appeal, the debtors question the refusal to enjoin the Board and the refusal to enjoin the action on the contractor's bond.

## II. STANDARD OF REVIEW

■ An appeal from a bankruptcy court's order granting or denying interlocutory injunctive relief is reviewed for an abuse of discretion, and the inquiry would consider such factors as the balance of hardships and the plaintiff's likelihood of success on the merits. *Graham v. Teledyne–Continental Motors, a Div. of Teledyne Industries, Inc.*, 805 F.2d 1386, 1388 (9th Cir.1986), *cert. denied sub nom.*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987).

■ Whether a particular action is exempt from the automatic stay is a question of law reviewed *de novo. In re Berg*, 198 B.R. 557, 560 (9th Cir. BAP 1996) (citing *In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991)). The bankruptcy court's findings of fact are reviewed for clear error. *In re Carroll*, 903 F.2d 1266, 1269 (9th Cir.1990) (citing *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1108 (9th Cir. 1989)).

## III. ISSUES

A. Whether the bankruptcy court erred in concluding that it should not grant injunctive relief because it was bound by the state agency's ruling that § 362(b)(4) authorized it to act.

B. Whether the bankruptcy court abused its discretion in refusing to enjoin the Martins' action against Surety Company of the Pacific to recover from Robert Dunbar's contractor's license bond.

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Erred In Concluding That It Should Not Grant Injunctive Relief Because It Was Bound By The State Agency's Ruling That § 362(b)(4) Authorized It To Act*

The law is clear in the Ninth Circuit that actions taken in violation of the automatic stay are "void," not merely "voidable." [6] *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992). If the state agency's actions were in violation of the stay and thus void, the actions could not be given any preclusive effect. Therefore, the bankruptcy court erred when it failed to independently determine whether the state agency's actions (i.e., (1) ordering restitution, and (2) ordering the payment of costs) violated the automatic stay.

### 1. *The automatic stay*

■ The automatic stay is immediately triggered upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). The scope of the automatic stay is quite broad, *In re Stringer*, 847 F.2d 549, 551 (9th Cir.1988), and is designed to immediately maintain the status quo by precluding and nullifying postpetition actions, whether judicial or nonjudicial, in nonbankruptcy forums against the debtor and property of the estate. *I.C.C. v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir.1991). Exceptions to the automatic stay are read narrowly, *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 590 (9th Cir. 1993), and actions taken in violation of the

---

**6.** Thus, *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir.1990), a case heavily relied upon by the state agency, is clearly distinguishable because violations of the automatic stay are merely "voidable" in the Fifth Circuit. *Id.* at 850. In addition, the *Picco* court stated: "In any case, even if the district court's decision did violate the stay automatic stay when it was entered, the bankruptcy court's order lifting the stay cured any defect." *Id.*

stay are void rather than voidable. *Schwartz,* 954 F.2d at 571.

An exception to the automatic stay appears in § 362(b)(4) for "the commencement or continuation of an action or proceedings by the governmental unit to enforce such governmental units' police or regulatory powers." 11 U.S.C. § 362(b)(4). This exception is intended to allow governmental units to sue a debtor "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law...." House and Senate Reports (Reform Act of 1978) (H.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978)).

The application of § 362(b)(4), however, is not automatic. State or local governments cannot, by the exercise of their police or regulatory powers, subvert the relief afforded by the bankruptcy laws. *In re Thomassen,* 15 B.R. 907, 909 (9th Cir. BAP 1981); *In re Sam Daily Realty, Inc.,* 57 B.R. 83, 86 (Bankr.D.Hawai'i 1985).

Two tests for determining whether a state agency's administrative actions fall within the scope of § 362(b)(4) exist: the "pecuniary purpose" test and the "public policy" test. Under the "pecuniary purpose" test, the court must determine whether the government action relates "primarily to the protection of the government's pecuniary interest in the debtors' property or to matters of public safety and welfare." *In re Universal Life Church. Inc.,* 128 F.3d 1294, 1297 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2367, 141 L.Ed.2d 736 (1998) (citing *N.L.R.B. v. Continental Hagen Corp.,* 932 F.2d 828, 833 (9th Cir.1991)). "Indeed, most government actions which fall under [§ 362(b)(4)] have some pecuniary component, particularly those associated with fraud detection. This does not abrogate their police power function. Only if the

action is pursued 'solely to advance a pecuniary interest of the governmental unit' will the automatic stay bar it." *Universal Life Church,* 128 F.3d at 1299 (9th Cir. 1997) (quoting *Thomassen,* 15 B.R. at 909).

The "public policy" test distinguishes between those proceedings that effectuate public policy and those that adjudicate private rights. *Universal Life,* 128 F.3d at 1297; *In re Charter First Mortg., Inc.,* 42 B.R. 380, 383 (Bankr.D.Or. 1984). Under the latter test, the court considers whether the administrative agency is exercising legislative, executive, or judicial functions. *In re Poule,* 91 B.R. 83, 86 (9th Cir. BAP 1988). "Where the agency's action affects only the parties immediately involved in the proceedings, it is exercising a judicial function and the debtor is entitled to the same protection from the automatic stay as if the proceeding were being conducted in a judicial form." *Id.*

2. *Neither collateral estoppel nor the Rooker–Feldman doctrine prevented the bankruptcy court from determining whether the state agency's actions violated the automatic stay*

The Ninth Circuit recently decided *In re Gruntz,* 177 F.3d 728 (9th Cir.1999) (1999), which effectively determines that a state tribunal lacks the authority to make a binding determination regarding the applicability of the automatic stay. In *Gruntz,* a debtor was convicted in California state court on criminal charges of failing to pay child support. The debtor argued in state court that his prosecution was invalid because it violated the automatic stay. The state court rejected this argument and the debtor was convicted. The California Court of Appeal affirmed his conviction. The debtor then filed a complaint in the bankruptcy court seeking injunctive and declaratory relief including, among other things, an order from the bankruptcy court that his California state court conviction was invalid because it violated the automatic stay.

The bankruptcy court granted Los Angeles County's motion to dismiss the complaint, holding that collateral estoppel precluded the debtor from relitigating in the bankruptcy court the stay issue which he had litigated in the California trial and appellate courts. The debtor appealed to the district court. The district court affirmed the bankruptcy court's dismissal of his complaint on the basis of the *Rooker–Feldman* doctrine, which generally prohibits federal courts from reviewing state court decisions.

The debtor then appealed to the Ninth Circuit Court of Appeals, which reversed on the basis that only a bankruptcy court could make a *binding* determination whether the state criminal proceedings for alleged failure to pay child support were in fact excluded from the automatic stay under § 362(b)(1). The Ninth Circuit incorporated the reasoning from our recent *Pavelich* decision in which we held that a state court judgment that necessarily construed the scope of the bankruptcy discharge did not preclude collateral attack in federal court. *In re Pavelich*, 229 B.R. 777 (9th Cir. BAP 1999).

Specifically, the Ninth Circuit agreed with our view that an erroneous state court decision regarding the automatic stay or the bankruptcy discharge, both of which are matters of exclusive federal authority, would "substantially infringe the authority" of the bankruptcy court. *Gruntz*, 177 F.3d at 734–35 *quoting Pavelich*, 229 B.R. at 784 *and* RESTATEMENT (SECOND) OF JUDGMENTS § 12(2).

Hence, neither the so-called *Rooker–Feldman* doctrine nor principles of collateral estoppel apply to afford binding effect to an incorrect state court construction of the automatic stay or bankruptcy discharge injunction that is made in connection with determining its jurisdiction to proceed in a matter before it. Although a state tribunal certainly has the authority to determine its own jurisdiction and, in so doing, to construe the automatic stay and discharge injunction, drawing the line in the wrong place may result in any ensuing judgment being treated as void *ab initio*.

In *Pavelich*, we also explained the intellectual history of the statutory provision that judgments of nonbankruptcy courts in derogation of the bankruptcy discharge (and, by analogy, the automatic stay) are void from the outset:

By federal statute, any judgment of any court that does not honor the bankruptcy discharge is "void" to that extent. Specifically, a bankruptcy discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(1).

The discharge also operates as an injunction against the commencement or continuation of an action to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2).

Section 524(a) was derived from former Bankruptcy Act § 14f, which was added in 1970 to correct a perceived abuse arising from the former status of a bankruptcy discharge as merely creating an affirmative defense that was waived if not affirmatively pleaded and proved in postbankruptcy litigation. By declaring that "any judgment theretofore or there after obtained in any other court is null and void as a determination of the personal liability of the bankrupt" as to discharged debts, Congress was expressly making it possible for a discharged debtor to ignore a creditor's subsequent action in a nonbankruptcy court. Bankruptcy Act § 14f, *added by* Pub.L. 91–467, § 3, 84 Stat. 991, *repealed by* Pub.L. 95–598, § 401, 92 Stat. 2682 (1978); 4 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 524.LH (15th ed. rev.1998).

The affirmative nature of the defense of discharge in bankruptcy, thus, was effectively outlawed in 1970. It became an absolute defense that relieved a discharged debtor from the need to defend a subsequent action in state court. *See* H.Rep. No. 91–1502, 91st Cong. 1–2 (1970); S.Rep. No. 91–117, 91st Cong. (1970); 116 CONG.REC. 9549 (1970) (Statement of Cong. Wiggins).

Thus, all judgments purporting to establish personal liability of a debtor on a discharged debt, including judgments obtained after bankruptcy, are void to that extent. They are not voidable, they are void ab initio as a matter of federal statute.

229 B.R. at 781–82.

This intellectual history reinforced our conclusion in *Pavelich* that the *Rooker–Feldman* doctrine did not apply to preclude consideration of whether the state proceeding was a legal nullity and void *ab initio*.[7]

As specifically pertinent to the instant appeal, we noted:

> [W]hen the bankruptcy court was presented with a request to consider whether it should entertain an injunction to enforce the discharge, it should not have taken the position that it could not examine the state court judgment.
>
> . . . .
>
> The bankruptcy court, of necessity, must be able to ascertain the extent to which the judgment is void under § 524(a)(1) as an essential element of determining whether the § 524(a)(1) discharge injunction has been violated.

*Id.* at 782. *Gruntz* makes clear that the same analysis applies to the automatic stay.

Thus, neither collateral estoppel nor the *Rooker–Feldman* doctrine prevented the bankruptcy court from determining whether the state agency's actions against Dunbar violated the automatic stay. The

bankruptcy court's ruling to the contrary was error.

a. *The bankruptcy court's order regarding restitution in this case*

The bankruptcy court hinted that the state agency order, at least with respect to restitution, violated the Bankruptcy Code. The bankruptcy court stated:

> Now, if you [the state agency] want to regulate him, and you have some power to regulate him, then you can go ahead and do that, but you do it at your peril, because there has been no ruling as to whether or not the police power exception applies. And it may or it may not apply.
>
> There's a lot of case law on what you're doing, and if you're doing—in other words, if it has a—the bottom line, there's a two-part test in the Ninth Circuit, but if you're acting for a pecuniary purpose, trying to get money out of [Dunbar], then the police power exception does not apply.

Transcript of Proceedings on Application for Temporary Restraining Order (June 8, 1998), p. 14.

The pertinent tests are the "public policy" and "pecuniary interest" tests, discussed above, that are applied to determine whether a state action violates the automatic stay.

We have previously dealt with the application of those tests in a factually similar contractor discipline situation involving the California Contractors' State License Board. *In re Poule*, 91 B.R. 83 (9th Cir. BAP 1988). In that instance, Poule, a general contractor, filed a chapter 11 case before the Board issued a citation that led to an order requiring the debtor to pay $5,304.30 in restitution to a third party and to pay a $350 civil penalty due to willful misconduct and fraudulent activities, in-

---

7. We note that the Bankruptcy Appellate Panel for the Sixth Circuit recently held to the contrary in *In re Singleton,* 230 B.R. 533 (6th Cir. BAP 1999).

cluding misapplication of funds that were required to be held in trust.

After Poule received his discharge, the Board instituted a license revocation proceeding predicated on nonpayment. The ALJ reasoned that the debt was not discharged because it had not been scheduled and recommended that Poule's contractor's license be revoked. We concluded that the ALJ's interpretation of the discharge status of the debt was incorrect and that the assessment of restitution as an adjudication of private rights was not within the reach of § 362(b)(4). As we stated in *Poule:*

> We conclude, therefore, that the [state agency's] assessment of civil penalties against the Debtor comes within the ambit of section 362(b)(4) and the penalties are valid. However, the (state agency's) assessment of the order of correction is the adjudication of private rights which, like the restitution obligation imposed in *Charter First Mortgage,* is not within the ambit of section 362(b)(4). The order of corrections is therefore void. *See In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816 (9th Cir.1985) (actions taken in violation of the automatic stay are void); *see also N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 940 (6th Cir.1986) (NLRB could proceed with actions under section 362(b)(4) without court approval, but if actions later held not be within scope of that section, they were void *ab initio* ).

*Id.* We also held that a state agency's assessment of $350 in civil penalties against the debtor came within the scope of § 362(b)(4) and was valid where the state agency was attempting to punish a debtor for fraudulent conduct. *Id.*

 In the case before us, Dunbar was ordered to pay restitution to the Martins and the costs of investigation to the state agency. Neither the state agency nor the ALJ imposed civil penalties upon Dunbar for any fraudulent conduct. At Dunbar's administrative hearing, the ALJ noted that the state agency provided "no evidence in

aggravation in the way of past discipline against the license of Dunbar ... or past criminal conviction." *See* Proposed Decision of Administrative Law Judge, Part XX, p. 9. The ALJ then reasoned:

> The law is clear that the police power exception of Title 11 U.S.C. section 362(b)(4) allows an agency to take regulatory actions which determine monetary penalties or obligations. [citations omitted]. However, attempts to collect monies owed to persons harmed by the same incident in which the regulatory action arose are prohibited. Title 11 U.S.C. section 362(b)(5) precludes enforcement of a monetary judgment. [citations omitted].
>
> Hence, in this matter, a decision determining that respondent Dunbar doing business as respondent Concrete & Masonry Construction violated Code section 7113 and also determining that the homeowner was damaged in the amount of $27,000, by reason of homeowner having to replace the concrete is not legally improper or in excess of discretion of the decision-making personnel in this formal administrative adjudication proceeding. However, any attempt to collect money on behalf of homeowner pursuant to said decision is prohibited, assuming the debt were discharged. In addition, the suspension or revocation of respondent's license for failure to pay a discharged debt is also prohibited. [citation omitted]. In sum, a regulatory action is not impermissible merely because it seeks to determine monetary obligations or because it may result in the need for the debtor to expend funds. However, an attempt to enforce a money judgment or seize the property of the estate is impermissible. [citation omitted].

Proposed Decision of Administrative Law Judge, Part XIII, p. 17 (emphasis added).

The state ordered Dunbar to make restitution to the Martins in the amount of $27,000.00. On remand, it will be appropriate for the trial court to consider the implications of the fact that the restitution

requirement is for the same amount as the damages in the context of whether a personal liability of the debtor has been determined. To the extent the state agency instituted proceedings to seek restitution on behalf of the Martins for Dunbar's violations of the Business and Professions Code in that amount, such state actions are not excepted from the automatic stay. *Poule,* 91 B.R. at 86–87 (citing *Charter First Mort., Inc.,* 42 B.R. at 385).

■■■ While it is permissible for a state agency to proceed with an administrative hearing, it proceeds at the risk that its efforts will be wasted. If it is later determined that the administrative proceeding was not excepted from the automatic stay, the entire proceeding is void *ab initio* as an act taken in violation of the stay. *N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 940 (6th Cir.1986) *aff'd,* 804 F.2d 934 (1986). *See also In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992) (clarifying the law that violations of the automatic stay are void, not voidable). Here, the decision of the administrative court ordering restitution had no collateral estoppel effect upon the bankruptcy court.

We must vacate and remand so that the bankruptcy court can determine for itself whether the automatic stay was offended because *Gruntz* makes clear that the state agency's ruling cannot be binding on that question. In doing so, the bankruptcy court will need to consider each of the various measures taken by the Board through the matrix of the automatic stay; some may be permitted and others prohibited.[8]

b. *The costs of the state agency's investigation in this case*

The state agency also ordered Dunbar to pay for the state's costs of investigation

in the amount of $2,921.56. The bankruptcy court must decide whether the state agency's imposition of costs upon Dunbar also falls within § 362(b)(4). This portion of the matter is therefore remanded for the bankruptcy court's consideration.

B. *Whether The Bankruptcy Court Abused Its Discretion In Refusing To Enjoin The Martins' Action Against Surety Company of The Pacific To Recover From Robert Dunbar's Contractor's License Bond*

The debtors assert that the Martins' state court action against Surety Company of the Pacific to collect from Robert Dunbar's contractor's license bond violates the automatic stay and, therefore, should be enjoined. In rejecting this argument, the bankruptcy court correctly held that the debtors had failed to meet their burden of demonstrating the likelihood of success prerequisite to the issuance of a preliminary injunction.

■■■ The contractor's license bond at issue is executed in favor of the State of California for the benefit of, among others, homeowners who are harmed by a contractor's violation of certain California laws governing contractors. CAL.BUS. & PROF. CODE § 7071.5. The Ninth Circuit Court of Appeals has held that a surety bond issued by a third party to guaranty a contractor's performance of its contracts is not property of the estate. *In re Lockard,* 884 F.2d 1171, 1177–78 (9th Cir.1989). The debtors attempt to distinguish *Lockard* on the basis that it allegedly involved a performance bond required by law that guaranteed workmanship rather than a license bond required by law that provided compensation for violations of state law. The rationale of *Lockard* is that, when a third party

8. We do not determine the question whether any portion of the Board's order violates 11 U.S.C. § 525(a) because that issue was neither specified in the pleadings nor decided below and has not been appropriately presented to us even though the Board has argued that it is in compliance with that prohibition. We note that any conclusion by the

bankruptcy court that the "rehabilitation" aspect of making a contractor pay for the consequences of his poor work does pass muster under § 525(a) would not necessarily preclude a determination that the automatic stay (§ 362(a)) or discharge injunction (§ 524(b)) has been violated.

posts a bond to guaranty a debtor's obligations, the bond is for the benefit of the third party beneficiaries of the bond, and is not property of the debtor or its estate. It does not make any difference whether the prerequisite to the third party's collection from the bond is breach of a contract or violation of a state law. The contractor's bond is therefore not property of the estate.

■ The Martins are proceeding directly against Surety Company of the Pacific in an attempt to collect from the contractor's bond, which is not property of the estate. The automatic stay does not enjoin such an action because it is, in essence, an action to collect from the debtor's guarantor or the guarantor's property. *Id.* at 1179 n. 15. The bankruptcy court did not abuse its discretion by refusing to enjoin the action to collect from Robert Dunbar's surety bond.

## V. CONCLUSION

Based on the foregoing, we AFFIRM the order regarding the contractor's bond, and we VACATE and REMAND the order denying injunctive relief as to the state agency action for further proceedings consistent with this Opinion.