In re FIRST ALLIANCE MORTGAGE COMPANY, Debtor.

Commonwealth of Massachusetts, Appellant,

v.

First Alliance Mortgage Company; Creditors' Committee; Borrowers' Committee; United States Trustee, Appellees.

BAP No. CC–00–1541–MaMoP. Bankruptcy No. SA 00–12370 LR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on March 22, 2001.

Filed May 9, 2001.

Patrick J. Evans, Rein, Evans & Sesta-
novich, LLP, Los Angeles, CA, Karen R.

Cordry, National Association of Attorneys General, Washington, DC, for Appellant.

William N. Lobel, Irell & Manella, LLP, Newport Beach, CA, for Appellees.

Before MARLAR, MONTALI, and PERRIS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

The bankruptcy court ruled that monetary claims asserted in a state court consumer protection action against the debtor were not exempt from the automatic stay, under the exception for an action to enforce a governmental unit's police or regulatory power. The Commonwealth of Massachusetts ("Commonwealth") appealed, and we REVERSE that portion of the order.[1]

### FACTS AND PROCEDURAL HISTORY

First Alliance Mortgage Co. ("FAMCO" or "debtor") is a financial services company and one of the affiliate debtors in jointly administered chapter 11[2] cases. FAMCO did business in several states, including Massachusetts.

Prepetition, the Commonwealth obtained a preliminary injunction against FAMCO, which prohibited it from engaging in the loan origination business.[3] The preliminary injunction ensued from the Commonwealth's lawsuit, filed under the Massachusetts Consumer Protection Act, on October 30, 1998. The Commonwealth asserted claims for injunctive relief, civil penalties, attorneys' fees and costs, and restitution on behalf of 299 Massachusetts consumers who had borrowed money from FAMCO. Litigation was pending in that action when FAMCO filed for bankruptcy protection on March 23, 2000.

### The Stay Relief Proceedings

On May 9, 2000, the Commonwealth filed a motion entitled "Commonwealth's Motion for Determination that the Automatic Stay Provision of the Bankruptcy Code Does Not Prevent the Commonwealth from Continuing its Superior Court Enforcement Action." It sought to continue to prosecute the state court action to a money judgment, but not to enforce such judgment. The Commonwealth alleged that the complaint was filed pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A § 4, which authorizes the Attorney General to commence an enforcement action against any person who is alleged to be engaging in unfair or deceptive acts or practices in

---

1. The bankruptcy court ordered that the injunctive relief count of the Commonwealth's action was not subject to the automatic stay and could proceed. That portion of the order has not been appealed, and shall stand.

2. References to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Rule references are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), Rules 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

3. Subsequent to the stay relief proceedings, the bankruptcy court *sua sponte* permanently enjoined FAMCO "from engaging in the loan origination business anywhere in the United States. The debtor did not appeal that December 1, 2000 order."

In the same proceeding, the bankruptcy court permanently enjoined the Commonwealth and other defendant governmental units from further prosecution of their police power actions. The Commonwealth appealed, and, on April 23, 2001, the district court reversed and remanded the matter, with instructions to the bankruptcy court to vacate its earlier order and to enter an order denying both the preliminary injunction and the permanent injunction sought by FAMCO.

violation of § 2(a) of the Act. The Commonwealth argued that the action was exempt from the automatic stay, under § 362(b)(4), which provides an exception to the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power ...." In the alternative, the Commonwealth sought relief from the automatic stay.

The motion was not accompanied by a declaration or a copy of the complaint. Nevertheless, the motion contained a detailed summary of the state court action and the allegations concerning FAMCO's business practices which gave rise to the consumer protection action. The Commonwealth alleged in its motion that the debtor had been charging excessive points for mortgage loans, and had engaged in deceptive sales and training techniques designed to conceal and mislead borrowers regarding the true measure of points charged by FAMCO.

FAMCO filed its opposition, and the attached declaration of its executive vice president and CEO Jeffrey W. Smith. Smith averred that the state court action was not meritorious, and defended FAMCO's business practices. In paragraph 10, Smith acknowledged the pending state court action, and stated: "I am informed and therefore believe that the Commonwealth ... is seeking restitution and damages for 299 of its citizens that were among the over 35,000 borrowers on loans issued by Debtor nationwide." FAMCO also acknowledged, in its opposition, that the Commonwealth was seeking, in the state court action, the remedies of permanent injunction, restitution, civil penalties,

and attorneys' fees and costs. Believing the injunctive relief to be moot because its operations had ceased, FAMCO also argued, in its brief, that the Commonwealth had "conced[ed] that the State Court Action was commenced 'to enjoin [the Debtor] from charging excessive points in its mortgage loans to Massachusetts borrowers ... and from otherwise engaging in conduct that is unfair or deceptive.'" FAMCO also contended that the Commonwealth failed to present evidence in order to establish a *prima facie* case.

The Creditors' Committee joined in the opposition, and based its objection on the litigation costs to the estate, which could deplete the assets needed for the debtor's liquidation plan.

At the hearing, the bankruptcy court stated that the Commonwealth had not supported its motion with proper evidence.[4] The court then discussed the merits of the stay exception as applied to the Commonwealth's claims. The court discussed the existence of about 35,000 potential claims against the debtor, all of which were similar to the 299 monetary claims asserted by the Commonwealth, and stated that all such claims should be liquidated in the bankruptcy case in order to treat similarly situated creditors fairly, and not deplete the liquidating estate.

The court then gave two oral rulings. First, the court denied the Commonwealth's motion for lack of evidence. Second, the court accepted the undisputed facts, and determined that only the injunctive relief was exempt from the automatic stay. The court stated:

> But further, even were I to take the arguments that have been made in the

---

**4.** The Commonwealth suggested that the court could take judicial notice of the complaint. However, the court responded that judicial notice required a written request noticed to all parties in interest. The Commonwealth has not assigned error to the bankruptcy court's refusal to take judicial notice.

papers and in court today, as having factual basis behind it and found it to be most compelling, I would still in these, the unique circumstances of this case, believe that it is appropriate to let the Commonwealth proceed with respect to any injunctive relief, and to show to the people of its—of the Commonwealth, that it is attempting to exercise its police powers on their behalf and it has—it may proceed to enjoin.

But other than that, this Court will not grant relief from stay, to allow the Commonwealth to proceed with respect to determining any damages, or any restitution, or any award, or any civil penalties amounts at this time.

The court's order was entered on June 26, 2000. It stated, in relevant part: "[T]he Motions are denied in their entirety due to lack of evidence, except that the Commonwealth may proceed in State Court with respect to its claim for injunctive relief."

### *The Motion for Reconsideration*

On July 6, 2000, the Commonwealth filed a motion entitled "Motion of Commonwealth of Massachusetts for Reconsideration of Its Motion for a Determination Concerning the Nonapplicability of the Automatic Stay."[5] Attached to the motion was a declaration of the Assistant Attorney General for the Commonwealth purportedly authenticating 549 attached pages of documentary evidence, including a copy of the subject complaint. The Commonwealth stated that the purpose of the motion was to provide the evidence that the bankruptcy court "believed was lacking,"

and, in addition, it reargued the merits of its original motion.

Both the debtor and the Creditors' Committee opposed the motion. The Commonwealth then replied that the motion, alternatively, was a Motion to Amend Findings, pursuant to Fed.R.Bankr.P. 7052/Fed.R.Civ.P. 52(b), based on the court's failure to delete the portion of the form of order which stated that the motion was being denied in its entirety for lack of evidence, when the court had also ruled on the merits.

After hearing argument, on August 17, 2000, the court made the following determinations on the record: (1) the stay relief order was *in the alternative*, and thus it correctly held that there was a lack of evidence, as well as ruled on the merits of the § 362(b)(4) exception; (2) stay relief as to the monetary claims was denied because the Commonwealth did not present evidence to prove that those claims fell under the § 362(b)(4) exception; (3) *alternatively*, the claims were denied because they "were in essence pecuniary actions and actions seeking the adjudication of private rights"; (4) the declaration that was submitted with the reconsideration motion was defective and constituted inadmissible evidence; (5) the motion pursuant to Fed.R.Bankr.P. 9023/Fed.R.Civ.P. 59 was denied because it failed to present any evidence that could not have been presented earlier and because the court had not erred in its earlier ruling; and (6) the motion pursuant to Fed.R.Bankr.P. 7052/Fed.R.Civ.P. 52(b) was denied because it had been untimely raised in the reply and

---

**5.** By order of December 28, 2000, our Motions Panel deemed July 6, 2000 as the filing date, so that the motion for reconsideration was a timely tolling motion as to the underlying stay relief order. Apparently, the Commonwealth had refiled the motion on July 20, 2000, after the Clerk's Office returned the motion as defective. The debtor has not raised jurisdictional or timeliness issues.

the stay relief order did not require amendment.[6]

The order denying the motion for reconsideration was entered on September 6, 2000. The Commonwealth timely appealed both the June 26th and the September 6th orders.[7]

## ISSUE

The sole issue is whether the Commonwealth's consumer protection action for civil penalties, attorneys' fees, and restitution for borrowers is exempt from the automatic stay under § 362(b)(4).[8]

## STANDARD OF REVIEW

■ The determination whether a particular action is exempt from the automatic stay is a question of law that we review *de novo*. *In re Berg*, 198 B.R. 557, 560 (9th Cir. BAP 1996), *aff'd*, 230 F.3d 1165 (9th Cir.2000).

## DISCUSSION

### A. Scope of § 362(b)(4)

■ The filing of a bankruptcy petition operates as a stay, applicable to all entities, of "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor...." § 362(a)(1). The general policy behind the automatic stay is to grant complete and immediate, albeit temporary, relief to the debtor from creditors, and to prevent dissipation of the debtor's assets before orderly distribution to all creditors can be effected. *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2nd Cir.2000). A main purpose of the stay is to protect the priority of payments to creditors. 3 COLLIER ON BANKRUPTCY § 362.05[5][b] at 362–61 (15th ed.2001).

■ The Code provides certain exceptions to the automatic stay, which are read narrowly. *In re Dunbar*, 235 B.R. 465, 470 (9th Cir. BAP 1999), *aff'd*, 245 F.3d 1058 (9th Cir.2001). Section 362(b)(4) provides an exception for certain governmental police and regulatory actions. Section 362(b)(4) provides that the filing of a petition does not stay

the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the gov-

---

6. The bankruptcy court also ruled that, to the extent the Commonwealth was moving for relief from stay for cause, such motion was also denied. *See* § 362(d)(1). The Commonwealth has not raised this issue on appeal and contends that it is appealing only the court's declaratory ruling on the stay exemption issue.

7. Based on our ruling on the merits of the June 26th order, we need not discuss the order on the motion for reconsideration.

8. We need not address the court's alternate ruling denying the Commonwealth's § 362(b)(4) motion due to a lack of evidence. The bankruptcy court properly ruled on the merits of the motion. The Commonwealth's motion for declaratory relief was in lieu of an

adversary proceeding for a determination of whether the automatic stay applied to its pending state court action—an action that was known to all parties. The record, including the pleadings and declarations, reveals that both parties were in agreement as to the relevant facts, *i.e.*, the complaint's existence, its allegations, and the relief sought. FAMCO even used one of the allegations, regarding its alleged deceptive conduct, to suggest that an injunction would be moot, because it had ceased the loan origination business.

Therefore, without discussing the relevant burdens of proof, and even though FAMCO did not concede *its* liability, those acknowledgments were sufficient, as stipulated facts, for the bankruptcy court to determine the nature of the Commonwealth's claims against FAMCO on the merits.

ernmental unit to enforce such governmental unit's ... police or regulatory power;

11 U.S.C. § 362(b)(4).

■ This provision permits a governmental unit to "commence or continue any police or regulatory action, including one seeking a money judgment, but it may enforce only those judgments and orders that do not require payment or authorize the government to exercise control over property of the estate." 3 COLLIER, *supra* at 362–59 to 362–60.

■ The legislative history of this section indicates that when a debtor is sued by a governmental unit in order "to prevent or stop violation of fraud, environmental protection, *consumer protection,* safety, or similar police or regulatory laws, *or attempting to fix damages for violation* of such a law, the action or proceeding is not stayed under the automatic stay." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299; S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838 (emphasis added). By allowing such actions to proceed, this exemption prevents the bankruptcy court from becoming a "haven for wrongdoers." *Berg,* 230 F.3d at 1167 (citation omitted).

■ Not every police or regulatory action is automatically exempt, however. Enforcement of laws that affect health, welfare, morals, and safety will not be stayed, but regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court will be stayed. *See In re Universal Life Church, Inc.,* 128 F.3d 1294, 1297 (9th Cir.1997). The Ninth Circuit applies two tests for determining whether a state's actions fall within the scope of § 362(b)(4): the "pecuniary purpose" test and the "public policy" test. *Id.*

■ Under the "pecuniary purpose" test, the court must determine "whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare." *Id.* at 1297 (citing *N.L.R.B. v. Continental Hagen Corp.,* 932 F.2d 828, 833 (9th Cir.1991)). The relevant inquiry is whether the action is being pursued "*solely* to advance a pecuniary interest of the governmental unit," in which case the stay will be imposed. *Universal Life Church,* 128 F.3d at 1297 (citing *In re Thomassen,* 15 B.R. 907, 909 (9th Cir. BAP 1981)) (emphasis added). Such actions have been described as those that would "result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate." *In re Charter First Mortg., Inc.,* 42 B.R. 380, 382 (Bankr.D.Or.1984).

■ The "pecuniary purpose" test overlaps, to some extent, the rule of federal supremacy, which was set forth in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (holding that a state law was rendered invalid to the extent that its purpose and effect was to frustrate the discharge granted under federal bankruptcy law). *Thomassen,* 15 B.R. at 909. The *Thomassen* panel opined:

The "pecuniary purpose" test cited above also seems to be aimed at preventing the circumvention of the relief available to both debtors and general creditors under the Bankruptcy Code. Although it specifically recognizes that the desire for economic advantage—either to the governmental unit, directly, or to its individual citizens—is often at the heart of statutory attempts to sidestep the effect of the federal bankruptcy laws, it finally rests upon the same Supremacy Clause arguments set forth in the *Perez* decision. State and local gov-

ernmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for a pecuniary purpose, they are automatically stayed, notwithstanding the exception found at 11 U.S.C. § 362(b)(4).

15 B.R. at 909.

In *Thomassen*, the State of California Department of Consumer Affairs initiated administrative proceedings against Dr. Thomassen, and determined that he had committed gross negligence in patient care, as well as dishonesty in his financial affairs. In anticipation of license revocation proceedings, he filed for bankruptcy protection, but the bankruptcy court held that the proceedings were not stayed. The BAP affirmed, because the charges against Dr. Thomassen "[did] not deal with his simple failure to make necessary payments to the state or to its citizens" but were brought to prevent and punish misconduct consisting of malpractice, professional incompetence, and fraud. *Id.*

■■■■ Courts also apply the "public policy" test in order to "distinguish between government actions that effectuate public policy and those that adjudicate private rights." *Universal Life Church*, 128 F.3d at 1297. Under this test, the court considers whether the government is exercising its legislative, executive, or judicial functions. *In re Poule*, 91 B.R. 83, 86 (9th Cir. BAP 1988). "Where the agency's action concerns only the parties who are immediately affected the debtor is entitled to the same protection it would receive under the automatic stay if the proceeding were instead in a judicial forum." *Charter First*, 42 B.R. at 384 (quoting *In re Dan Hixson Chevrolet Co.*, 12 B.R. 917, 921 (Bankr.N.D.Tex.1981)); *see also Poule*, 91 B.R. at 86.

In the instant case, the bankruptcy court allowed the Commonwealth's action for injunctive relief to proceed, but held that the claims for civil penalties, attorneys' fees and restitution were stayed, because those actions did not meet the "pecuniary purpose" or "public policy" tests.

### B. Civil Penalties and Attorneys' Fees

■■■■ The Commonwealth initiated a lawsuit against FAMCO under the provisions of its consumer protection act. The purpose of that law is "to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Poznik v. Mass. Medical Prof'l Ins. Ass'n*, 417 Mass. 48, 53, 628 N.E.2d 1, 4 (1994). It "proscribes unfair or deceptive acts or practices in conduct of trade or commerce." *Veranda Beach Club Ltd. P'ship v. Western Sur. Co.*, 936 F.2d 1364, 1385 (1st Cir.1991). As a deterrence measure, it also "imposes liability on persons seeking to profit from unfair practices." *Id.*; Mass. Gen. Laws ch. 93A § 2.

■■■■ From legislative history and case law, it is well-established that consumer protection is a valid exercise of the police and regulatory power for purposes of § 362(b)(4). Here, the Commonwealth sought to impose civil penalties against FAMCO for its alleged unfair and deceptive loan practices. This action falls squarely within its public policy of protecting consumers and deterring violators.

Where the debtor is being prosecuted for engaging in fraudulent conduct, the automatic stay should not allow the debtor to be shielded from the government's attempt to protect its citizens and uphold its laws related to the health and welfare of its citizens. The Ninth Circuit recognized in *Universal Life Church* that the "[d]etection of fraud ha[s] been sustained as a valid basis for invoking the exception even

when there is an additional pecuniary interest at stake." 128 F.3d at 1298. It further opined that "[i]ndeed, most government actions which fall under this exemption have some pecuniary component, particularly those associated with fraud detection." *Id.* at 1299.

Even courts that would treat restitution as outside the scope of § 362(b)(4) treat civil penalties and attorneys' fees as being within the scope of the exception. *See Dunbar*, 235 B.R. at 474 (civil penalties come within the scope of § 362(b)(4)); *Poule*, 91 B.R. at 87 (Registrar's assessment of civil penalties against the debtor were within the ambit of § 362(b)(4)); *Charter First*, 42 B.R. at 384 (holding that it was "totally appropriate for Washington to proceed in the state court to attempt to obtain an injunction, civil penalties, and attorney fees and costs against debtor for alleged violation of its Consumer Protection Act").

The bankruptcy court in the case at bar expressed concern about the potential for multiple prosecutions in the various states where FAMCO did business, and the financial effect of such litigation on the bankruptcy estate. However, to hold that a governmental action does not come within § 362(b)(4) for such reason would run counter to the fundamental policy behind the exception, which is to prevent the bankruptcy court from becoming a haven for wrongdoers. *Berg*, 230 F.3d at 1167. The bankruptcy court has other avenues to prevent general harm to the estate, *i.e.*, its powers under § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

FAMCO also contends that these causes of action are unnecessary since it has already ceased its loan origination business. However, civil penalties may be assessed for violations of the statute. Mass. Gen. Laws ch. 93A § 4. The penalties imposed for consumer fraud meet both the pecuniary purpose test and the public policy test. Under § 362(b)(4), the bankruptcy court need not also determine whether the government's exercise of its police or regulatory power is a legitimate one. *Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 39, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991).

Therefore, we hold that § 362(b)(4) exempts the Commonwealth's prosecution to judgment of its claims for civil penalties and attorneys' fees from the automatic stay.

### C. Restitution Claims

The Commonwealth is also seeking to recover restitution, in the form of money damages, on behalf of 299 Massachusetts borrowers, who are also creditors of the estate. The Commonwealth contends that the restitution claims are not "solely pecuniary" because they further the state's consumer protection policies, and the Commonwealth will not seek to enforce the judgment outside of the bankruptcy case. The Commonwealth further contends that *it* is the plaintiff, not such private third parties; therefore, continuing with the claims liquidation process in state court would promote public policy. FAMCO contends, on the other hand, that the restitution action is solely pecuniary and for the benefit of private parties.

Under the "pecuniary purpose" test, the inquiry is whether the action "relates *primarily* to the protection of the government's pecuniary interest in the debtor's property, or to matters of public policy." *Berg*, 230 F.3d at 1167 (emphasis added). Traditionally, courts have looked at what effect the action will have on the bankruptcy estate, and the supremacy of federal laws. Here, the bankruptcy court determined that the 35,000 similar, unliquidated

claims against the estate could be more equitably adjudicated in the bankruptcy claims process.

We believe that a trilogy of Ninth Circuit cases supports the Commonwealth's position and requires us to reverse the bankruptcy court's decision.

■■■■ The power to determine a debtor's liability or to liquidate a damages claim may legitimately be part of an exempt police or regulatory action. The Ninth Circuit Court of Appeals has held:

> Indeed, most government actions which fall under this exemption have some pecuniary component.... This does not abrogate their police power function. Only if the action is pursued "*solely* to advance a pecuniary interest of the governmental unit" will the automatic stay bar it.

*Universal Life Church,* 128 F.3d at 1299 (citing *Thomassen,* 15 B.R. at 909) (emphasis added).

In *Universal Life Church,* the Ninth Circuit Court of Appeals held that the IRS issuance of a letter revoking the debtor's tax exempt status was exempt from the stay, even though the IRS also required the Church to file tax returns, and which also estimated the outstanding tax to be more than $6 million. The appellate court rejected the debtor's position "that the IRS must have *no* pecuniary motive at all to fall within section 362(b)(4)," and held that the revocation letter was exempt from the stay because it served a "public policy purpose." 128 F.3d at 1298–99 (emphasis added).

In *Berg,* the Ninth Circuit Court of Appeals held that the purpose of pursuing litigation sanctions was to effectuate public policy, even though the monetary penalty would enure to the benefit of a private party. 230 F.3d at 1168. The court agreed with the reasoning that "although private parties may benefit financially from sanctions, the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." *Id.*[9] (citations omitted).

The third Ninth Circuit opinion in the trilogy convincing us that the Commonwealth's restitution claims are exempt from the automatic stay is *Continental Hagen.* There, the National Labor Relations Board had filed an unfair labor practices complaint against the debtor, and sought damages consisting of back wages for unionized employees and truck drivers. The Court of Appeals made the important distinction that the NLRB was not seeking to enforce a judgment, but only to obtain a money judgment and liquidate its claim. Therefore, the back pay provision would not jeopardize nor interfere with the pending bankruptcy proceeding. 932 F.2d at 834–35. The action also passed the public policy test, the court held, because the NLRB was not providing a forum for private parties, but was acting in its own name in furtherance of the policies of the federal labor laws. *Id.* at 834.

The reasoning of *Continental Hagen* and other NLRB cases was subsequently applied to exempt from the stay the entry of a back pay award in an action brought against a debtor by the Massachusetts Commission Against Discrimination. *See In re Mohawk Greenfield Motel Corp.,* 239 B.R. 1 (Bankr.D.Mass.1999). The court stated:

> [T]he decisions of the various courts of appeal permitting the entry of monetary awards at the behest of the EEOC and the NLRB, and particularly the aforesaid decisions by the First Circuit applying considerations which the Ninth Circuit has articulated apply with equal force.

9. We note that *Berg* involves sanctions rather than restitution, but the powerful policy considerations which the Ninth Circuit has articulated apply with equal force.

ing § 362(b)(4) to NLRB back pay awards, reflect an unmistakable similarity to the issues raised here, a conspicuous trend toward the allowance of such awards postpetition and a clear recognition that back pay awards are a necessary methodology to serve the public purpose envisioned by the underlying statutes.

239 B.R. at 8–9.

■ We, too, find a similarity between the cases which exempt actions for back pay, and the present action for restitution to citizens of Massachusetts for the debtor's violation of the consumer protection laws, so long as the Commonwealth seeks only the entry, and not the enforcement, of the money judgment.

These cases provide authority for the Commonwealth's argument that its money claims, which are part of the totality of its consumer protection remedies, are for a public purpose, and not solely for the pecuniary gain to the Commonwealth or its individual citizens. Nor does the entry of a monetary judgment reduce the estate or interfere with the bankruptcy. Such a judgment only serves to liquidate the Commonwealth's claim against the estate. FAMCO will be entitled to all of its defenses to the Commonwealth's action in the Massachusetts state court action. Furthermore, these cases support the conclusion that the Commonwealth was not seeking to adjudicate private rights, but was primarily pursuing remedies for alleged violations of its consumer protection laws.

A few courts in the Ninth Circuit, including a BAP panel, have held that a restitution judgment would create an unfair advantage for those victims over other creditors of the estate by interfering with the bankruptcy court's exclusive jurisdiction to adjudicate claims in bankruptcy. Those cases are either distinguishable or

were decided without the guidance provided by the trilogy of Ninth Circuit Court of Appeals decisions discussed earlier.

In *Charter First*, a 1984 opinion, the Washington State Attorney General had commenced postpetition litigation against the debtor for violations of the Washington Consumer Protection Act, seeking injunctive relief and restitution on behalf of the debtor's victims. The bankruptcy court opined that under the "pecuniary purpose" test it had to determine whether the government action "would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate." 42 B.R. at 382. It held that an order of restitution would be "creating for those few citizens an advantage over other potential creditors of the debtor's estate" because "[t]he [state] court will have made a binding judicial determination as to both the existence and legitimacy of those claims without having had to consider and apply the many technical conditions created by the Bankruptcy Code which test the validity of claims against the debtor's estate." *Id.* at 385.

The *Charter First* court then looked at the "public policy" test, under which it was required to determine whether the action for restitution was fulfilling a public policy or adjudicating private rights. It held that the restitution action did not have, "as its primary purpose, the protection of the public health and safety; rather, its objective [was] to aid in the collection of property for third parties." *Id.* at 385. The court further suggested that federal law supercedes an attempt to collect private claims outside of the bankruptcy system, which "was established to exclusively adjudicate claims against the estate." *Id.* at 384.

The bankruptcy court in *Charter First* did not distinguish between the effect of

the entry of a judgment and enforcement of that judgment, as other courts have done. *See Continental Hagen,* 932 F.2d at 834. The bankruptcy court anticipated that the state's claims would be enforced in the bankruptcy case. *Charter First,* 42 B.R. at 384. It therefore determined that entry of a restitution judgment would be detrimental to the other creditors of the estate. Its reasoning is not crystal clear, except in terms of the law of supremacy.[10]

The Ninth Circuit opinions, which we discussed above, have given us guidelines for determining when a state action interferes with federal bankruptcy law. Moreover, the Ninth Circuit Court of Appeals has held, in view of *Perez* and a later Supreme Court opinion in *Midlantic Nat'l Bank v. New Jersey Dept. of Env. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), that "federal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned with economic regulation rather than with protecting the public health and safety." *In re Baker & Drake, Inc.,* 35 F.3d 1348, 1353 (9th Cir.1994). The action in this case was primarily concerned with consumer protection, and it does not conflict with any purpose of federal bankruptcy law.

*Charter First* was cited with approval in two Ninth Circuit contractor restitution cases. In *Poule,* the BAP held that the State Registrar of Contractors' assessment of an order of corrections, which required

the debtor to reimburse a customer, resulted from the adjudication of purely private rights and thus did not fall under the § 362(b)(4) exception. 91 B.R. at 87. The assessment of civil penalties, on the other hand, served the public policy of punishing the debtor for fraudulent conduct, and therefore that portion of the action was not stayed. *Id.* at 86.

In *Dunbar,* the BAP cited with approval both *Charter First* and *Poule.* There, the California Contractors' State License Board had issued an order of correction, following an administrative hearing, which required the debtor to pay $27,000 in restitution for the debtor's violations of the Business and Professions Code. 235 B.R. at 475. The debtor argued that the government action should be enjoined because it violated the automatic stay. The BAP remanded the matter with instructions that the bankruptcy court should determine if the action violated the automatic stay. The BAP examined § 362(b)(4) and held that, to the extent the state agency had instituted proceedings to seek restitution based on a determination of the debtor's personal liability, such action was not excepted from the automatic stay. *Id.* at 474–75.[11]

*Poule* and *Dunbar* are distinguishable on their facts. First, they involved violations of legislation enacted to protect individual consumers, who are injured by the acts of building contractors on specific jobs. The remedy typically sought is the assessment of restitution and damages for repair of shoddy workmanship. Thus, the

---

10. The reasoning of *Charter First* was applied by an Illinois bankruptcy court to stay restitution claims brought by the Attorney General under that state's consumer protection laws. *See In re Liss,* 59 B.R. 556, 557 (Bankr. N.D.Ill.1986). The *Liss* court saw the potential for a consumer in Illinois, who had not been joined in the action, to file an inconsistent proof of claim in bankruptcy court.

11. In affirming *Dunbar,* the Ninth Circuit Court of Appeals noted that the BAP "declined to reach this [§ 362(b)(4)] issue, remanding instead so the bankruptcy court could fully consider it." *Id.,* 245 F.3d at 1064.

debtor's noncompliance with an order of correction could lead to license revocation proceedings against the debtor. In such instances, almost always initiated by private citizens acting in their individual interests, the restitution action is an action to enforce private rights rather than to protect public interests.

In contrast, in this case, the state attorney general commenced a consumer protection action on behalf of 299 persons who were victimized by the debtor's violation of laws enacted to protect consumers. Thus, viewed in its entirety, the Commonwealth's efforts are not intended "solely" to advance a pecuniary interest or primarily to adjudicate private rights. Rather, the focus of the Commonwealth's action is to enjoin illegal conduct and achieve penalties and restitution as a deterrent to future unlawful activity.

Also, to the extent that *Poule* and *Dunbar* relied on *Charter First*, the Ninth Circuit case law, discussed herein, has broadened the scope of enforcement of private rights under § 362(b)(4). *See Berg, supra.*

The Commonwealth argues that the trend in the law is to look at restitution as just one arrow in the entire consumer protection quiver. For example, in *In re Luskin's, Inc.*, 213 B.R. 107 (D.Md.1997), the Maryland Attorney General's Consumer Protection Division prosecuted an action against the debtor for advertising tactics that were in violation of the Consumer Protection Act. The state sought to obtain restitution for consumers who had relied on the advertisements. The debtor argued that the state was pursuing a pecuniary interest in his property by attempting to adjudicate the private rights of consumers adversely affected by the advertisements. The district court reversed the stay that had been imposed by the bankruptcy court, and determined that the consumer

protection action, which included injunctive relief and restitution, was "a legitimate use of ... police power and/or regulatory power even though it seeks to reduce a monetary claim to judgment." The state, it found, was attempting to halt unfair trade practices by implementing the statutory purpose of its consumer protection law, *i.e.*, to protect the public interest. *Id.* at 110.

█ The facts in our case are similar to those in *Luskin's*. The Massachusetts Consumer Protection Act was designed to impose liability on persons seeking to profit from unfair or deceptive acts or practices. *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 25, 679 N.E.2d 191, 207 (1997). The restitution count is only one component of an action that is concerned with the overall protection of the public. Moreover, the restitution judgment would simply liquidate all or part of the Commonwealth's unsecured claim against the debtor. It would not give priority of the estate's assets to the Commonwealth or elevate its citizens' rights over the rights of other claimants. We reject the view that merely because the police or regulatory action will determine the debtor's liability for a potpourri of money damages—including damages inuring to the benefit of third parties—that such portion must be severed from the entire action, and stayed.

█ The Massachusetts Consumer Protection Act provides for actions for damages either by the Attorney General on behalf of citizens, or by private citizens. *See* Mass. Gen. Laws ch. 93A §§ 4, 9, 11. In this case, the Attorney General was the plaintiff. The law allows the Commonwealth to obtain "orders or judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act or practice any mon-

eys ... which may have been acquired by means of such method, act, or practice." Mass. Gen. Laws ch. 93A § 4. The Commonwealth seeks to liquidate its consumer protection claims, measuring its damages by the losses suffered by 299 of its citizens. The restitution action would simply fix part of the government's unsecured claim against the debtor, but would not give priority to the Massachusetts individuals over other claimants from other states. *See In re Commonwealth Cos.*, 913 F.2d 518, 524 (8th Cir.1990) (holding that entry of a money judgment under the False Claims Act for a bid rigging conspiracy "would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate").

The restitution action here fits the harrow exception of § 362(b)(4) for fixing damages for violations of the consumer laws. Thus, the action is not primarily a vehicle for conducting litigation on behalf of private parties. *See Eddleman v. U.S. Dept. of Labor*, 923 F.2d 782, 791 (10th Cir.1991), *overruled in part on other grounds, Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003 (10th Cir.1992) (liquidation of back pay claims for specific individuals was another method of enforcing policies under federal law). However, collection and enforcement of the restitution claims must proceed according to normal bankruptcy procedures, and are stayed.

Therefore, we hold that the bankruptcy court erred by determining that the Commonwealth's restitution claims were not exempt from the automatic stay pursuant to § 362(b)(4).

### CONCLUSION

The Commonwealth's state court action for alleged violations of the consumer pro-

tection laws was exempt in its entirety from the automatic stay. Therefore, we **REVERSE** that portion of the judgment which denied relief to the Commonwealth on its restitution, civil penalties and attorneys' fees claims, for purposes of obtaining judgment, but not enforcement of such claims.