**UNITED STATES of America,
Plaintiff,**

**v.**

**FEDERAL RESOURCES CORPORATION; Blum Real Estate Trust; Bentley J. Blum, personally and in his capacity as Trustee of the Blum Real Estate Trust; and Camp Bird Colorado, Inc., Defendants.**

**Federal Resources Corporation,
Counter–Claimant,**

**v.**

**United States of America,
Counter–Defendant.**

**Case No. 2:11–cv–00127–RCT.**

United States District Court,
D. Idaho.

Signed Jan. 12, 2015.

Amanda Shafer Berman, David L. Dain, Elizabeth Louise Loeb, United States Department of Justice, Washington, DC, Syrena Case Hargrove, Amy S. Howe, United States Department of Justice, Boise, ID, Katherine L. Matthews, Paul Gormley, United States Department of Justice, Denver, CO, for Plaintiff/Counter-Defendant.

Stanley J. Tharp, Eberle Berlin Kading Turnbow & McKlveen, Boise, ID, Gregg M. Rosen, McGuire Woods LLP, Pittsburgh, PA, Michael E. Ramsden, Ramsden & Lyons, Coeur D'Alene, ID, for Defendants.

Stanley J. Tharp, Eberle Berlin Kading Turnbow & McKlveen, Boise, ID, for Counter-Claimant.

### ORDER DIRECTING ENTRY OF FINAL JUDGMENT

RICHARD C. TALLMAN, Circuit Judge.

This suit arises out of an environmental cleanup recovery action brought by the United States under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 42 U.S.C. § 9607 (2012). The United States brought this action against Defendants Federal Resources Corporation ("FRC"), Camp Bird Colorado, Inc. ("CBCI"), the Blum Real Estate Trust ("Blum Trust"), and Bentley J. Blum ("Blum") seeking recovery of funds incurred for cleaning up hazardous waste at two mine sites in Idaho, the Conjecture Mine in Bonner County and the Minnie Moore Mine in Blaine County. The Court previously ruled on liability and damages in a memorandum decision granting summary judgment in favor of the United States, which was filed on July 14, 2014. *See* Dkt. 313; *United States v. Fed. Res.*

*Corp.,* 30 F.Supp.3d 979 (D.Idaho 2014). The Court also granted the United States' veil-piercing and Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3304(a)(2) (2012), claims. *Id.*

The United States did not move for summary judgment on its attorneys fees claim, and this Court denied the Government's request to certify the July 14, 2014, decision as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure because the attorneys fees were not severable from the rest of the United States' CERCLA claims. Dkt. 323. Ultimately, on December 23, 2014, the United States withdrew its sole remaining claim for attorneys fees with prejudice and requested entry of final judgment. *See* Dkt. 345. Before this Court was able to do so, Defendants FRC and CBCI filed for bankruptcy in the District of Utah. *See* Dkts. 348, 349; *In re Fed. Res. Corp.,* No. 14–33427 (Bankr.D.Utah); *In re Camp Bird Colorado, Inc.,* No. 14–22428 (Bankr. D.Utah).

During a telephonic status conference held with all parties' counsel on December 31, 2014, the Court asked for briefing as to what, if any, action it could take in light of the bankruptcy filings by some, but not all, of the parties to the present action. Snell & Wilmer, L.L.P., counsel for the debtor corporations, entered a special appearance and filed pleadings urging the Court to do nothing further. Dkt. 358. Counsel for Blum and Blum Trust joined in that request. Dkt. 360. The United States filed a memorandum urging entry of final judgment as against all Defendants. Dkt. 359.

The present issue before the Court is whether it may enter final judgment for the United States without violating the automatic stay provision of the Bankruptcy Code. *See* 11 U.S.C. § 362(a). In particular, the Court must determine whether the CERCLA and FDCPA claims fall within the § 362(b)(4) "police or regulatory powers" exception to the automatic stay provision. *Id.* § 362(b)(4). While the Ninth Circuit has already indicated the FDCPA claim falls within this exception, whether the section 107 CERCLA claims do appears to be a matter of first impression in our circuit. Based on the legislative history and analogous case law, the Court concludes that the exception applies and the Court may proceed to enter final judgment as to all parties on both the FDCPA and CERCLA claims.

The Court also concludes that the exception applies to the extent the veil-piercing claim may be construed as affecting the debtor parties, since the result inures to the benefit of the bankruptcy estate by ordering an asset, the Camp Bird Mine, restored to FRC that was fraudulently and unlawfully transferred to the Blum Trust in an effort to frustrate the ability of the United States to recoup its costs of cleaning up contaminated mine sites in Idaho. *See* Dkt. 313; *Fed. Res. Corp.,* 30 F.Supp.3d at 1000–02. However, the United States may not execute or collect upon any part of the monetary judgment as against only Defendants FRC and CBCI without seeking relief from the stay in the bankruptcy court.

## I. Jurisdiction

The Ninth Circuit has held that the district court has jurisdiction to decide whether the 11 U.S.C. § 362(a) automatic stay applies in any given case, and, in particular, whether the police or regulatory powers exception of § 362(b)(4) applies. *See Lockyer ex rel. California v. Mirant Corp.,* 398 F.3d 1098, 1107 (9th Cir.2005).

## II. Merits

Under 11 U.S.C. § 362(a), the filing of a voluntary bankruptcy petition imposes an "automatic stay" on "the commencement

or continuation ... of a judicial ... action , or proceeding against the debtor...." 11 U.S.C. § 362(a)(1); *see In re Yun*, 476 B.R. 243, 252–53 (9th Cir. BAP 2012) (unpublished) (succinctly summarizing this area of the law). Section 362(a) is the general rule that governs the automatic stay and is intended to be broad. *See In re Yun*, 476 B.R. at 253. However, Congress also listed several exceptions to the general rule—enumerating situations where the automatic stay does not apply and litigation may proceed against debtors barring discretionary relief granted by the bankruptcy court. One such statutory exception is the police or regulatory powers exception found in § 362(b)(4). *See* 11 U.S.C. § 362(b)(4).

Section 362(b)(4) currently reads:

(b) The filing of a [bankruptcy] petition ... *does not operate as a stay* ... (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation *of an action or proceeding by a governmental unit* or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, *to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment*, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power....

*Id.* (emphasis added). Although the language could be read to narrow the application of this exception solely to actions pursued under the Convention, the legislative history belies this assumption.

Prior to 1998, the police or regulatory powers exception read:

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....

*See United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir.1988). Beginning, in the late 1980s, this exception was regularly invoked in environmental cases to allow the government to proceed despite a bankruptcy filing. *See, e.g., City of New York v. Exxon Corp.*, 932 F.2d 1020, 1023–24 (2d Cir.1991) (allowing City's section 107 CERCLA claim for reimbursement of cleanup costs to proceed because the § 362(b)(4) exception applied where the governmental unit was merely attempting to fix liability and damages, and not to execute upon or enforce a money judgment); *Nicolet, Inc.*, 857 F.2d at 207–08 (same); *In re Commerce Oil Co.*, 847 F.2d 291, 294–96 (6th Cir.1988) (applying exception where the government was pursuing violations of Tennessee Water Quality Control Act); 3 *Collier on Bankruptcy* ¶ 14.05[1][a],[b] (16th ed.2014).[1] These cases relied upon legislative statements

---

**1.** *Collier on Bankruptcy* observes that courts are generally in agreement that the government may *pursue* recovery cost actions under CERCLA section 107, 42 U.S.C. § 9607, until judgment, but the automatic stay bars the government from *collecting* on that judgment. 3 *Collier on Bankruptcy* ¶ 14.05[1][a],[b] (16th ed.2014); *cf. N.L.R.B. v. Cont'l Hagen Corp.*, 932 F.2d 828, 832–35 (9th Cir.1991) (finding NLRB's distinction between the *entry* of judgment and the *enforcement* of that judgment convincing and supported by the case law with regard to back pay claims). The courts are apparently divided over section 106 CERCLA claims. *Id.* Here, the United States has sought recovery costs under CERCLA section 107. *See* Dkts. 214, 235.

surrounding the enactment of the original legislation, including:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, *environmental protection,* consumer protection, safety, or similar police or regulatory laws, or *attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.

*City of New York,* 932 F.2d at 1024 (emphasis in original) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838, 6299; H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977)); *Nicolet, Inc.,* 857 F.2d at 208; *see also In re First Alliance Mortg. Co.,* 263 B.R. 99, 107 (9th Cir. BAP 2001) (quoting the same portion of the legislative history). As the Ninth Circuit has explained, "[t]he theory of this exception is because bankruptcy should not be 'a haven for wrongdoers,' the automatic stay should not prevent governmental regulatory, police and criminal actions from proceeding." *In re Universal Life Church, Inc.,* 128 F.3d 1294, 1297 (9th Cir.1997) (citing 3 *Collier on Bankruptcy* ¶ 362.05[5][a] (15th ed.1996)).

In 1998, Congress amended 11 U.S.C. § 362(b)(4) and (b)(5) with very little commentary. *See* Iran Missile Proliferation Sanctions Act of 1997, Pub.L. No. 105–277, Div. I, Title VI, § 603(1), 112 Stat. 2681 (1998). The amendment repealed § 362(b)(5) and folded the language into the new § 362(b)(4). *Id.* The amendment also added new language relating to the "Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction." *Id.* The legislative history

surrounding the amendment contains minimal discussion of the purpose for the change. *See* 144 Cong. Rec. H4283 (daily ed. June 9, 1998); 143 Cong. Rec. H10646 (daily ed. Nov. 12, 1997).

The legislative history surrounding the 1998 amendment demonstrates that, in effect, nothing changed. The Congressional Record from June 9, 1998, states: "Section 273 of H.R. 2709 replaces the exceptions to the automatic stay in paragraphs (4) and (5) of 11 U.S.C. [§ ]362(b) with *both* a broader exemption for governmental units *and* explicit language embracing organizations exercising authority under the Chemical Weapons Convention." 144 Cong. Rec. at H4286 (emphasis added). The remaining relevant portion of the record emphasizes that enforcement and collection efforts are *not* part of the police and regulatory powers. *Id.* Moreover, the day after the bill was passed, the Honorable John Conyers, Jr., the ranking member of the House Judiciary Committee, sought to clarify that the new legislation "should not be read to expand the exception[ ]" beyond its original narrowly construed language. 143 Cong. Rec. E2305 (daily ed. Oct. 21, 1998) (statement of Hon. John Conyers, Jr.). He also clarified that the police and regulatory powers exception was still to apply beyond activities involving chemical weapons under the Convention. *Id.; see also* 3 *Collier on Bankruptcy* ¶ 362.05[5][b], at 362–66 (16th ed.2014) (stating that the additional reference to the Convention *could* be read narrowly to modify the police or regulatory powers exception entirely, but "such a reading would eviscerate the automatic stay exception[ ] ... and was surely not intended").

Without referring to the legislative history surrounding the 1998 amendment, circuit courts of appeals have continued to analyze the § 362(b)(4) police or regulatory powers exception in exactly the same

manner as before. *See City & Cnty. of S.F. v. PG & E Corp.*, 433 F.3d 1115, 1123–24 (9th Cir.2006); *Mirant Corp.*, 398 F.3d at 1107–08; *In re First Alliance*, 263 B.R. at 106–07; *see also In re Basinger*, No. 01–02386, 2002 WL 33939736, at *6 (Bankr.D.Idaho Jan. 31, 2002) (unpublished) ("None of these recent cases dealt with enforcement of environmental laws, though environmental protection has long been recognized as within the panoply of police powers."); *accord* 3 *Collier on Bankruptcy* ¶ 362.05[5][b], at 362–64–68 (16th ed.2014) (suggesting this is the better approach). These cases often refer back to the legislative history surrounding the original passage of the bill in 1978. *See City & Cnty. of S.F.*, 433 F.3d at 1123–24 & nn. 8–9; *In re First Alliance*, 263 B.R. at 106–07; *accord In re Halo Wireless, Inc.*, 684 F.3d 581, 586–87 (5th Cir. 2012); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 488 F.3d 112, 132–33 (2d Cir.2007) (citing Ninth Circuit case for proposition that removal and exceptions to the automatic stay are treated virtually identical, and following *City of New York* decision in removal context); *Safety–Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 864–66 (4th Cir.2001) (citing *Nicolet* and *City of New York* CERCLA cases as analogous).

■ As a result, this Court concludes that, although the police and regulatory

powers exception is narrow, it applies here. *Cf. City & Cnty. of S.F.*, 433 F.3d at 1128 (Callahan, J., dissenting). First, the Ninth Circuit has specifically found consumer protection actions to fall within the exception's purview. *In re First Alliance*, 263 B.R. at 106–10; *see Mirant Corp.*, 398 F.3d at 1107 (reaffirming the holding of the Bankruptcy Appellate Panel of the Ninth Circuit's decision in *First Alliance*). In doing so, the BAP relied upon the 1978 legislative history (quoted above) that referenced environmental protection and *consumer protection* as quintessential examples of the police or regulatory powers exception. *In re First Alliance*, 263 B.R. at 107. Thus, judgment for the United States' FDCPA claim may be entered against all Defendants on behalf of the Government.[2]

■ Second, the Court does not find persuasive Defendants FRC and CBCI's claims that 11 U.S.C. § 362(a) prohibits this Court from entering judgment on the veil-piercing claims, particularly as against the non-bankrupt Defendants. *See* Dkt. 358. The Court granted the United States' motion requesting piercing of the corporate veil in order to allow the Government to reach through the myriad companies owned or controlled by Blum and reach his personal assets to satisfy FRC's debts. *See* Dkt. 313; *Fed. Res. Corp.*, 30 F.Supp.3d at 1000–02. Blum has not yet

---

**2.** In their supplemental briefing, counsel for the debtors assert that this FDCPA claim is now moot based on a putative rescission of the March 2010 fraudulent transfer that took place after the Court entered its July 14, 2014, summary judgment decision. *See* Dkts. 358, at 10–11; 359, at 10; 360. This claimed rescission, which took place after the Court held the original transfer to be fraudulent, was not brought to the Court's attention until the supplemental briefings filed by both parties on January 9, 2015, when entry of final judgment was imminent. *See* Dkt. 358, Ex. A (dated July 23, 2014). If the Utah bankruptcy

court determines the asset has been properly returned to FRC, it may then exercise its authority over this asset of the bankruptcy estate. But this Court will make no finding as to the authenticity or veracity of the purported "Rescission of Share and Asset Transfer and Debt Assignment Agreement." *See id.* Thus, this Court declines to rule as to whether this portion of the judgment is moot and proceeds to enter final judgment even as to this claim as an extra precaution to effectuate the Court's previous ruling for the United States on its FDCPA claim against Blum and his alter ego corporate shells.

filed for bankruptcy and is not entitled to its automatic stay provision, and, if anything, entering final judgment against Blum on the veil-piercing claim will inure to the benefit of FRC, thus benefitting the bankruptcy estate. To the extent this judgment affects FRC and may be barred by the automatic stay provision, this Court holds it falls within the § 362(b)(4) exception because the purpose of this Court's decision was to prevent further fraudulent activities. *See id.* The Ninth Circuit has held detection of fraud to also fall squarely within the purview of the § 362(b)(4) exception based on the legislative history. *See In re Universal Life Church, Inc.*, 128 F.3d at 1298 ("Detection of fraud [has] been sustained as a valid basis for invoking the exception even when there is an additional pecuniary interest at stake."). Therefore, this Court holds it may enter final judgment on the United States' veil-piercing claim as well.[3]

The Ninth Circuit has not yet had occasion to consider whether entry on a final judgment for recovery of costs under CERCLA section 107 falls within the police or regulatory powers exception to the stay in bankruptcy, although other circuits have. *See City of New York*, 932 F.2d at 1024 (Second Circuit); *Nicolet, Inc.*, 857 F.2d at 202–03 (Third Circuit). Thus, this appears to be an issue of first impression in our circuit. Because this Court finds the Third and Second Circuit cases persuasive, and the 1978 legislative history specifically references *environmental protection* as one of the rationales behind including the police and regulatory powers exception, the Court holds the United States' CERCLA claims also fall within the § 362(b)(4) exception.

In order to determine whether § 362(b)(4) applies, the Ninth Circuit employs two tests: (1) the "pecuniary purpose" test, and (2) the "public policy" test. *City & Cnty. of S.F.*, 433 F.3d at 1123–24. If either test is satisfied, then the exception applies and the Government may proceed without violating the automatic stay. *See Mirant Corp.*, 398 F.3d at 1108.

"Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare." *In re Universal Life Church, Inc.*, 128 F.3d at 1297. If the action relates to the former, then the § 362(b)(4) exception does not apply and the action will be subject to the automatic stay; if it relates to the latter, then the exception *does* apply and the action may proceed. *See Mirant Corp.*, 398 F.3d at 1109.

Under the "public policy" test, courts must "distinguish[ ] between government actions that effectuate public policy and those that adjudicate private rights." *In re Universal Life Church, Inc.*, 128 F.3d at 1297 (internal quotation omitted). "If the government seeks the former, the exception applies; if the government seeks the latter, it does not." *Mirant Corp.*, 398 F.3d at 1109 (citations omitted). Thus, under the two related and somewhat overlapping tests, governmental actions effectuating public policy by protecting public safety and welfare fall squarely within the police or regulatory powers exception to the Bankruptcy Code's automatic stay provision.

---

**3.** Because the Court is directing entry of final judgment for the United States on its veil-piercing claim, the Court does not need to reach the Government's claim for enforcement of the Guarantees endorsed by Blum,

CBCI, and the Blum Trust. *See* Dkt. 359; *see also Fed. Res. Corp.*, 30 F.Supp.3d at 1001 ("The existence of Blum's unsecured, personal guaranty does not [obviate] the need for veil piercing. . . . ").

Here, the United States satisfies both tests. "[E]fforts to rectify harmful environmental sites are obvious exercises of the state's power to protect the health, safety, and welfare of the public." *Nicolet, Inc.*, 857 F.2d at 208. The fact that "most government actions which fall under this [exception] have some pecuniary component ... does not abrogate their police power function." *In re Universal Life Church, Inc.*, 128 F.3d at 1299. The Government's attempts to recover costs under CERCLA section 107 is primarily to promote public welfare, rather than to pursue its own pecuniary interests, and thus meets the first test.

Although the analysis need go no further, courts typically analyze both tests. *See City & Cnty. of S.F.*, 433 F.3d at 1125. The "public purpose" test is not satisfied if a suit "is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Id.* (internal quotation omitted). Where "the clear goal of these proceedings is to remedy and prevent environmental damage with potentially serious consequences for public health," the aim is to effectuate a broad public policy, not advantage discrete parties. *See In re MTBE Products Liability Litigation*, 488 F.3d at 133. Thus the second test is satisfied as well. Entry of final judgment on the amount of recovery costs is, therefore, not prohibited by the stay in bankruptcy.

Finally, the Court may enter judgment against FRC on its counterclaims because the automatic stay provision of the Bankruptcy Code applies only in cases "*against* the debtor." 11 U.S.C. § 362(a)(1) (emphasis added); *see also*

*Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204–05 (3d Cir.1991) (holding closely related counterclaims "*by* the debtor may continue"). Alternatively, even if the compulsory counterclaims did trigger the automatic stay provision due to their relatedness to the United States' CERCLA action, *see* Dkt. 358, this Court finds they would still fall under the police or regulatory powers exception of § 362(b)(4) for that very same reason. *Cf. Parker v. Bain*, 68 F.3d 1131, 1137–38 (9th Cir.1995).[4] Thus, the Court may still enter judgment on FRC's counterclaims.

In sum, the Court holds that the police and regulatory powers exception under § 362(b)(4) applies to the instant proceedings; the automatic stay provision of the Bankruptcy Code is inapplicable; and the Court directs the Clerk to enter final judgment as to all parties. Execution of this judgment as to Defendants Federal Resources Corporation and Camp Bird Colorado, Inc., only, is **STAYED** pending further proceedings in the United States Bankruptcy Court for the District of Utah or upon further order of this Court. The parties shall provide joint status reports every six months, informing this Court of the status of the Utah bankruptcy proceedings.

The Clerk shall enter final judgment in the following form attached.

**IT IS SO ORDERED.**

---

4. In *Parker*, the Ninth Circuit expressly adopted the reasoning of the Third Circuit in *Maritime Electric Co.*, but held in the case before it the counterclaims were so closely related to the action against the debtor that the automatic stay should apply. *Id.* at 1137. However, *Parker* was not an environmental case, and thus it did not analyze any of the exceptions to § 362(a)'s automatic stay.